JUD PLUMBING & HEATING, INC., A DISSOLVED CORPORATION ACTING THROUGH ED. J. JUD, PRESIDENT AND DIRECTOR AT THE TIME OF DISSOLUTION AND T. W. NEELY, DIRECTOR AT THE TIME OF DISSOLUTION, CONSTITUTING A MAJORITY OF THE BOARD OF DIRECTORS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ALICE GORRELL JUD (WIFE OF ED. J. JUD), TRANSFEREE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ED. J. JUD, TRANSFEREE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 5441, 5442, 5443.   Promulgated May 23, 1945.

*A. N. Moursund, Esq.,* and *Ben F. Irby, C. P. A.,* for the petitioners.
*J. Marvin Kelley, Esq.,* for the respondent.

132

HARRON, *Judge*: The issue in this proceeding requires a determination of the correct method of accounting to be used by the corporation in computing its income for the last period of its existence. The corporation used two different methods of accounting, one for its repair work and the other for its contract work. Only the method used for the contract work is in controversy here.

The corporation had been in existence since 1926. For a number of years prior to the taxable year, it had computed its income from the contract work on the completed contract method of accounting, which takes into gross income, for tax purposes, the profits or losses upon the completion of the contract. The corporation was formally dissolved on September 5, 1941, and all of its assets were transferred to petitioner, Ed. J. Jud, as of August 31, 1941. At that date the corporation had 22 uncompleted contracts in process of construction.

These contracts, which were in various stages of completion, were taken over by Jud, personally, and completed by him during the taxable year, and the income from the contracts was taken into account in the community returns of the individual petitioners. The corporation did not compute any profits from these uncompleted contracts at the date of its dissolution, nor did it take into account as taxable gross income any amount with respect to these contracts.

The respondent has determined the deficiencies upon the basis of the four largest contracts. He has ignored the other 18 contracts as being insignificant, although 16 resulted in an ultimate profit and 2 in an ultimate loss. The respondent has determined the profit on each of the 4 contracts to August 31, 1941, by computing the ratio of costs incurred to August 31, 1941, to the final costs on each contract and then applying that ratio to the total profits on each contract.

The petitioners contend that the corporation had no taxable income from these contracts at the date of its dissolution because the contracts were not completed at that time, and its standard method of accounting took into account only profits or losses computed as of the date the contracts were completed. They argue that this method has been consistently used by the corporation and that respondent is without authority to compute income by a different method merely because the corporation was liquidated.

Under the respondent's regulations the corporation could elect to report gross income from contracts covering a period in excess of one year at the time the contracts were completed, provided that such method was consistently used and clearly reflected the net income. Regulations 103, sec. 19.42–4 (b). Two of the four contracts, namely, the Randolph Field contract and the Fred Poage contract, were completed in less than one year, and thus the regulations did not authorize the corporation to use the completed contract method of accounting for these contracts. However, petitioners contend that the corporation's consistent practice has been to treat these contracts on the same basis as long term contracts, and since respondent, in the notice of deficiency, has used the same method of allocating income to these contracts as he did to the Lincoln Courts and Victoria Courts contracts, we think the same method of accounting should be used in computing the profits on all of the four contracts.

Section 41 of the Internal Revenue Code provides, in part, as follows:

The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. * * *

The method of accounting in connection with long term contracts authorized by the regulations clearly reflects income if it is consistently used and if the taxpayer continues in existence. However, if a corporation using that method is liquidated during the taxable year and prior to the completion of the contracts, the completed contract method of accounting does not clearly reflect income for the final period of the corporation's existence. Therefore, under section 41 the respondent is authorized to recompute the corporation's income by the use of such method as will clearly reflect the income. The effect of the method used by the respondent in this proceeding is to reallocate the income from the contracts in proportion to the work done by the respective parties. *The fundamental concept of taxation is that income is taxable to him who earns it and that concept, we think, is correctly applied by the respondent here.* That the corporation earned the income which respondent has taxed to it seems apparent from the facts. For example, in the Lincoln Courts contract the final cost of the contract was $69,785.15. The costs incurred to August 31, 1941, and apparently expended by the corporation, were $68,334.97. Progress estimates of $82,524.46 had been rendered by the corporation to the customer and $72,307.97 had actually been received by the corporation to August 31, 1941. Thus, after August 31, 1941, Ed. J. Jud expended only $1,450.18 as additional costs, but he received payments of $11,044.73 and reported in his return for the taxable year the total profit of $13,861.55.

The completed contract method of accounting has a limited application. However, if it is used the taxpayer does not report income from a contract until such contract is completed, nor does he take any deductions with respect to the expenses incurred in the contract until completion, at which time he strikes a balance and reports either profit or loss. Although this method of accounting is sanctioned under certain conditions, the primary requisite is that it must correctly reflect income. The completed contract method is primarily an accrual method of accounting. In *United States* v. *Anderson,* 296 U. S. 422, it was pointed out that the accrual system was incorporated into the law:

* * * to enable taxpayers to keep their books and make their returns according to scientific accounting principles, by charging against income earned during the taxable period the expenses incurred in and properly attributable to the process of earning income during that period; * * *

In this case if the corporation had remained in existence the method of accounting used would have correctly reflected income. However, upon liquidation of the corporation prior to completion of the contracts, the income from the work done by the corporation is not reported if the completed contract method of accounting is followed. Thus, although the completed contract method of accounting is an

accrual system, its effect here, if petitioners' contentions were sustained, would be to subvert the fundamental concept of an accrual system of accounting.

It can not be said that the method of accounting used by respondent in computing the deficiencies is so unreasonable and arbitrary that it must be disregarded. Under the circumstances, it is probably the best method of determining the correct allocation of the profits from each contract. Cf. *Reynolds* v. *Cooper*, 64 Fed. (2d) 644; affd., 291 U. S. 192; *Rouss* v. *Bowers*, 30 Fed. (2d) 628; certiorari denied, 279 U. S. 853. At any rate, petitioners have not shown a better way to allocate the profits. Since respondent's determination is prima facie correct, the burden of establishing a better' method is upon the petitioners.

The petitioners rely upon *Commissioner* v. *Montgomery*, 144 Fed. (2d) 313, and *Iowa Bridge Co.* v. *Commissioner*, 39 Fed. (2d) 777. Those cases, however, are distinguishable upon their facts. In the *Montgomery* case, *supra*, the taxpayer correctly reported in his individual income tax return his proportionate share of the profits from a long term construction contract which was assigned to a corporation prior to completion. The issue in the *Iowa Bridge Co.* case, *supra*, did not involve the applicability of section 41 of the Internal Revenue Code and in that case the Government rested the entire issue upon the question of the validity of the assignments. In any event that decision was rendered before the Supreme Court decisions of *Helvering* v. *Horst*, 311 U. S. 112, and *Harrison* v. *Schaffner*, 312 U. S. 579, which emphasize the principle that income is taxable to the person who earns it. This case more nearly resembles *Guy M. Shelly*, 2 T. C. 62, where we held that income was properly taxable to the liquidated corporation even though the long term contract was not fully completed at the time of such liquidation.

Accordingly, respondent's determination is sustained.

*Decision will be entered for the respondent.*